```
                                              FILED
                                              MAY 19 2008
     UNITED STATES DISTRICT COURT      NANCY MAYER WHITTINGTON, CLERK
       FOR THE DISTRICT OF COLUMBIA          U.S. DISTRICT COURT
```

| UNITED STATES OF AMERICA | : | Criminal No. 08-100 |
|---|---|---|
| | : | |
| v. | : | Violation: |
| | : | |
| PATRICIA ELIZABETH GONZALEZ, | : | 18 U.S.C. §§ 201(b)(2)(A) and (C) |
| | : | (Receipt of a Bribe by a Public Official) |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, defendant **PATRICIA ELIZABETH GONZALEZ** ("**GONZALEZ**") and the United States agree and stipulate as follows:

1. Defendant **GONZALEZ** was hired by the District of Columbia Department of Motor Vehicles (hereinafter referred to as "DMV") in June 2002 as a Customer Service Representative. She was an exemplary employee, using her bilingual skills often to translate for many customers who only spoke Spanish. Her duties quickly expanded in all areas of DMV's operations, including processing applications submitted by individuals seeking to obtain District of Columbia driver's licenses where she was responsible for examining applications and supporting documentation to determine a customer's eligibility for obtaining a driver's license based upon established guidelines from DMV legislation, laws, regulations and policies.

2. Pursuant to these established guidelines, defendant **GONZALEZ** knew that foreign nationals were eligible to obtain District of Columbia driver's licenses if they had proof that they were legally present in the U.S. and could continue legally reside in the U.S. for at least another six months. To process an application for a driver's license, defendant **GONZALEZ** further knew that

1

the foreign national must was required to present proof of his name, date of birth, social security number, and District of Columbia residency and that the DMV would only accept certain types of documentation. For example, original birth certificates, unexpired passports or resident alien cards were acceptable to prove an individual's identity (i.e., name and date of birth). Defendant **GONZALEZ** could not issue a driver's license to a foreign national unless, in addition to tendering the required documentation, he completed a driver's license application with his signature, certifying that the information contained therein was correct and accurate. Finally, Defendant **GONZALEZ** knew that the driver's license issued to a foreign national remained valid only as long as the individual was legally present in the U.S.

4.   Once a foreign national applicant established his eligibility to obtain a driver's license, defendant **GONZALEZ** knew that the applicant was required to pass the following three tests: vision screening, knowledge and street sign recognition and skills road. Applicants who possessed a valid driver's license from another state, however, did not need to take the knowledge and street sign recognition and skills road examinations. Applicants who possessed a valid driver's license from a foreign jurisdiction did not need to take the road test, but were required to pass the vision screening and knowledge and street sign recognition tests. It was part of defendant **GONZALEZ**'s duties to administer the vision screening test for the applications she processed.

5.   Beginning in June 2002, defendant **GONZALEZ** was assigned to the DMV branch at 1233 Brentwood Road, N.E. (hereinafter referred to as "Brentwood DMV"). In May 2007, defendant **GONZALEZ** was promoted to Legal Instrument Examiner. Although she was no longer a resident of the District of Columbia, defendant **GONZALEZ** used her mother's address and claimed a residency preference for this new position. On May 21, 2007, defendant **GONZALEZ**

2

was transferred to the Georgetown Service Center, which is inside the Georgetown Park Mall, located in the lower level of 3222 M Street, N.W. (hereinafter referred to as "Georgetown DMV"). She continued to process driver's license applications.

6. From at least October 19, 2005, through January 16, 2008, defendant **GONZALEZ** issued approximately 200 driver's licenses to foreign nationals who were either ineligible to obtain a driver's license from the District of Columbia or did not successfully complete the examination requirements. On most of these occasions, defendant **GONZALEZ** issued the driver's licenses without requiring the customer to complete an application and present supporting documentation to verify his name, date of birth, social security number, District of Columbia residency, and legal presence in the U.S. Defendant **GONZALEZ** knowingly entered false information into DMV's computer system and used her override authority to issue the licenses where the computer system's internal controls rejected the data. For example, if the social security number she entered failed to verify because it did not match the name or date of birth entered or was invalid (<u>e.g.</u>, the number had yet to be issued by the Social Security Administration), defendant **GONZALEZ** overrode the system and falsely asserted in a comment box that the customer had presented a verification letter from the Social Security Administration. If a customer did not possess a social security number, defendant **GONZALEZ** often entered "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" and made a false comment entry that a social security number verification was not required. With respect to the legal presence in the U.S. requirement, defendant **GONZALEZ** falsely entered that many of these individuals were U.S. citizens. For others, defendant **GONZALEZ** elevated an individual's status to Permanent Resident and extended the expiration date of the individual's legal status significantly to avoid the requirement that the driver's license expire on the date of expiration of legal status and fraudulently

extended the expiration date of the driver's license to the maximum period permitted by law, that is the individual's last birthday within five years from the date the driver's license was issued.

7.      Defendant **GONZALEZ** bypassed the knowledge and road skills examination requirements by falsely entering data in the computer system that the individual possessed a valid out-of-state driver's license. Defendant **GONZALEZ** knew that the DMV's interstate verification process could not differentiate between driver's licences and identification cards. Therefore, when an individual presented a valid identification card from the State of Maryland or the Commonwealth of Virginia, defendant **GONZALEZ** entered the identification card number as the individual's previous driver's license information, which obviated the need for an override. When the individual did not provide defendant **GONZALEZ** with any form of identification, she often entered completely false information and made a comment entry that the interstate verification system was "down" (i.e., not working properly). On a number of occasions, defendant **GONZALEZ** entered that the individual possessed a valid foreign driver's license and bypassed the knowledge test requirement by inputting bogus test results or adding a comment that the system that verified the test results was down.

8.      Initially, defendant **GONZALEZ** used her position and knowledge of DMV's computer system to issue driver's licenses to individuals who were unable to pass either the knowledge or road skills examinations. Since defendant **GONZALEZ** was often called upon to assist Spanish speaking customers, she learned of their inability to read either English or Spanish. Because she sympathized with them, she issued their driver's licenses even though they had failed either the knowledge or road skills examinations. Defendant **GONZALEZ** was also sympathetic

4

to those customers who had legitimately obtained driver's licenses from the District of Columbia, but were required to return to the DMV often to renew their driver's licenses because their work permits were only valid for short periods of time. Accordingly, she often extended the expiration date to the full time permitted by law for U.S. citizens. For example, on October 19, 2005, at approximately 4:24 p.m., defendant **GONZALEZ** renewed a District of Columbia driver's license for Salvador Diaz (hereinafter referred to as "Diaz") and extended the expiration date until March 1, 2012 even though she knew his work permit bore an expiration date several years earlier. Similarly, on November 30, 2006, at approximately 1:27 p.m., defendant **GONZALEZ** renewed a District of Columbia driver's license for Gloria Gonzalez Paz (hereinafter referred to as "Gonzalez Paz") and extended the expiration date until March 8, 2012, by falsely inputting into DMV's computer system that Gonzalez Paz's legal status was valid until September 12, 2015. At the time defendant **GONZALEZ** renewed these licenses, neither Diaz nor Gonzalez Paz resided in the District of Columbia.

9.   In the Fall of 2006, Diaz began bringing other foreign nationals to defendant **GONZALEZ** at the Brentwood DMV to obtain facially valid driver's licenses. Most, if not all, of these individuals were not eligible to obtain such driver's licenses because they did not reside in the District of Columbia and/or were not legally present within the U.S. To solicit her assistance, Diaz paid defendant **GONZALEZ** between $700 and $800 for every fraudulent license she issued. In return for the money, defendant **GONZALEZ** did not require these individuals to complete applications or verify the information she entered into the computer system. As stated above, she issued these licenses without requiring these individuals to pass any of the three required examinations. Defendant **GONZALEZ** continued to accept payments of cash from Diaz in return

for issuing facially valid driver's licenses to ineligible individuals until May 2007, when she transferred to the Georgetown DMV.

10.     Meanwhile, defendant **GONZALEZ** and others at the Brentwood DMV ordered food from nearby Tropicana Eateries, a Jamaican food carry-out that Gonzalez Paz and her husband owned. One day, defendant **GONZALEZ** agreed to assist Gonzalez Paz's illiterate uncle to obtain a driver's license without taking any of the required tests. Sometime thereafter, in the Spring of 2007, Gonzalez Paz began bringing other foreign nationals to defendant **GONZALEZ** at the Brentwood DMV to obtain facially valid driver's licenses. As with those individuals whom Diaz brought, most of these individuals were not eligible to obtain such driver's licenses because they did not reside in the District of Columbia or were not legally present within the U.S. or for as long as defendant **GONZALEZ** entered into the DMV computer system. Defendant **GONZALEZ** continue to issue fraudulent licenses to individuals whom Gonzalez Paz brought even after defendant **GONZALEZ** transferred to the Georgetown DMV. In fact, Gonzalez Paz brought dozens of individuals to the Georgetown DMV until Gonzalez Paz's arrest on January 16, 2008. On average, Gonzalez Paz paid defendant **GONZALEZ** $500 per fraudulent driver's license. It was defendant **GONZALEZ**'s understanding that Gonzalez Paz was not receiving any money in return for helping these individuals to obtain driver's licenses. In fact, based upon Gonzalez Paz's representations, defendant **GONZALEZ** issued fraudulent licenses to some of the individuals whom Gonzalez Paz brought to the Georgetown DMV for "free."

11.     While working at the Brentwood DMV, defendant **GONZALEZ** also met a middle-aged woman named Maria. Maria had come into the Brentwood DMV in the Spring of 2007, to return some vehicle tags for a friend. Maria told defendant **GONZALEZ** that some people in her

Church needed help obtaining driver's licenses because they could not read. Several weeks later, defendant **GONZALEZ** began meeting Maria at the Rhode Island Avenue Metro station before work, at which time Maria paid defendant **GONZALEZ** $1,000 in advance to issue a driver's license later in the day to someone whom Maria would send. In July 2007, when defendant **GONZALEZ** transferred to the Georgetown DMV, defendant **GONZALEZ** began meeting Maria at the K Street, N.W. bus stop where defendant **GONZALEZ** caught the bus to the Georgetown DMV. Maria continued to pay defendant **GONZALEZ** $1,000 per fraudulent license.

12. In total, defendant **GONZALEZ** obtained more than $10,000 from Diaz, Gonzalez Paz and Maria (last name unknown) in return for her (a) being influenced in the performance of her official acts and (b) being induced to do and omit to do acts in violation of her official duties, to wit, issuing District of Columbia driver's licenses without verifying the applicants's name, social security number, immigration status, residency in the District of Columbia, and failing to obtain compliance from the applicants with other requirements for obtaining a District of Columbia driver's license, including successful completion of the vision, knowledge and skill roads tests.

_____
PATRICIA ELIZABETH GONZALEZ